# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

| | |
|---|---|
| KATHY APPLEGATE BATES, *individually and on behalf of all those similarly situated*, | )<br>)<br>) |
| *Plaintiff*, | ) Case No. 7:24-cv-864 |
| v. | ) **CLASS ACTION COMPLAINT** |
| FOOD LION LLC, *a North Carolina limited liability company*, | ) **JURY TRIAL DEMANDED** |
| *Defendant*. | ) |

Kathy Applegate Bates ("Plaintiff"), individually and on behalf of all other consumers similarly situated throughout the United States, by and through undersigned counsel, hereby brings this action against Food Lion LLC ("Food Lion") alleging that the Food Lion Fruit and Grain Cereal Bars, strawberry, blueberry, apple pie, and mixed berry flavors (collectively, the "Products"), which are formulated, manufactured, labelled, advertised, distributed, and sold by Defendant Food Lion, are misbranded and deceptively labelled as set forth herein, and upon information and belief and investigation of counsel alleges as follows:

## PARTIES

1.      Plaintiff Kathy Applegate Bates is and at all times relevant was a citizen of the state of North Carolina, domiciled in Hubert, Onslow County, North Carolina.

2.      Defendant Food Lion LLC is a North Carolina limited liability company with its principal place of business and headquarters in Salisbury, North Carolina.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the

United States Code); specifically, under   which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.     Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

5.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.     This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

8.     Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

9.      Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and have in fact engaged in such interactions, including the sale of the Products to Plaintiff.

10.     Defendant also distributes and sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

11.     Plaintiff's losses and those of other Class members were sustained in this district.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

13.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.      Consumers Pay A Premium for "Clean Label" Foods.**

14.     Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors or preservatives.

15.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes, with 67 percent preferring foods with "No preservatives." (67 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

16.     This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent

from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

17.    Plaintiff purchased the blueberry flavor of the Products on or about April 1, 2024 from a Food Lion store in Swansboro, North Carolina. Plaintiff believes and avers that she has purchased all flavors of the Products at multiple times throughout the putative class period.

18.    Plaintiff is a mother of several small children who attempts to purchase "clean" food for her family. She reviews labels in an attempt to avoid artificial flavorings.

**B.    Defendant's Use of Artificial Flavoring.**

19.    Defendant Food Lion at all times relevant distributed, marketed, and sold the Products under its in-house brand name.

20.    The Products state on the front label (or "principal display panel") that they are "Naturally Flavored" and "Made With Real Fruit Filling," as seen in this example:



21.     These statements are false and/or misleading. All of the Products contain an ingredient known as "malic acid" which is used as a flavoring in the Products. The form of malic acid used in these Products is artificial, as set forth in greater detail below.

22.     The word "malic" in malic acid derives from the Latin *malum*, for apple. Malic acid derived from natural fruit sources (usually apples) is commonly known as "L malic acid" instead of its scientific name, 2-Hydroxybutanedioic acid. L malic acid is quite expensive and is generally cost-prohibitive to use in mass-produced foods and beverages.

23.     There is a synthetic or artificial version of malic acid derived from a petroleum substrate and other synthetic components. It is commonly referred to as DL malic acid, instead of its scientific name of d-hydroxybutanedioic acid. DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

24.     Federal regulations state explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

25.     When testing malic acid to determine whether it is artificial (DL) or natural (L) malic acid, the industry standard is to test for the presence of the "D isomer" of malic acid. This isomer is not present in any amount in L malic acid. Therefore, the presence of the D isomer of malic acid in any amount in a food or beverage indicates the use of artificial DL malic acid instead of natural L malic acid.

26.     Counsel for Plaintiff commissioned testing of the Products. That testing was conducted on or about June 13, 2024 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts, a reputable independent food testing and analysis laboratory that has conducted testing for the food and beverage industry since 1984.

5

27.     This testing by Krueger Food Laboratories revealed that the D isomer was present the Products. This testing therefore establishes that the malic acid used in these Products is DL malic acid, and not L malic acid. And as stated explicitly in federal regulations incorporated as substantive state law, "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

**C.     Requirements for Labelling Regarding Flavoring.**

28.     Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The overall profile of a fruit flavor in a food is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid. Fruits such as blueberries and strawberries have their own natural ratio of sugars and acids.

29.     That is, as a matter of food chemistry, there is no such flavor as "blueberry" or the like. Rather, there is a ratio between acids and sugars that is consistent with what the human tongue senses and understands as the flavor "blueberry," and that is naturally found in blueberries and other fruits.

30.     By adjusting the ratio between sugars and acids through the use of malic acid in foods and beverages, a manufacturer is enabled to create or simulate from scratch a "flavor" such as blueberry, through replication of the sugar/acid ratio present in blueberries and other fruits in nature.

31.     In addition, by adding malic acid to a food or beverage, the manufacturer is enabled to reinforce the characterizing fruit flavor of the food product. That is, food manufacturers and formulators are enabled to adjust the flavor notes of a fruit flavor such as blueberry, increasing the food product's commercial acceptability.

32.     Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

6

33. Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

34. Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

35. Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

36. If a food product's characterizing flavor is not created *exclusively* by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. Specifically, if any component is present used that "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

37. That is, pursuant to 21 C.F.R. § 101.22(i)(2) even if a food or beverage is flavored with blueberries, its label must state that it is "Artificially Flavored" if an artificial substance is used to reinforce the flavor profile of the food product.

38. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance

7

. . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

39.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

40.     That is, whenever a food manufacturer uses malic acid to simulate or reinforce the characterizing flavor of a food or beverage, it is required under federal regulations to state that the food or beverage is "Artificially Flavored" if the malic acid used to simulate or reinforce the characterizing flavor is DL malic acid.

41.     By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products by Defendant reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included. The DL malic acid in the Products is therefore an "flavor" within the meaning of 21 C.F.R. § 101.22(i)(2) whose use must be disclosed through an "Artificially Flavored" statement on the front label if it is not derived from natural sources.

42.     DL malic acid is an "artificial flavor" and not a "natural flavor" as those terms are defined at 21 C.F.R § 101.22(a)(1) and (a)(3) and corresponding state regulations, because   it is not derived from a fruit or vegetable or any other natural source, but rather from a petroleum substrate. Therefore, pursuant to 21 C.F.R. § 101.22(i)(2) and corresponding state regulations, its use must be disclosed through an "Artificially Flavored" statement on the front label of the Products.

43.     Further, the presence of artificial malic acid in the Products has a material bearing on price or consumer acceptance of the Products, and consumers may be and have been misled about the presence or absence of the artificial DL malic acid that is a component in the Product.

*See* 21 C.F.R. § 102.5. Among the consumers misled about the presence of artificial malic acid in the Products is the Plaintiff, as set forth below.

44.     Because the Products contain artificial flavoring, federal regulations and corresponding state law incorporating and enacting those regulations require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored. *See* 21 C.F.R. § 101.22(i)(2).

45.     The Products have none of the required disclosures regarding the use of artificial flavors. In fact, the Products' front label bears the false and deceptive statements that they are "Naturally Flavored."

46.     The concentration of DL malic acid in the Products, as well as the fact that malic acid is used in varying concentrations in the different flavors of the Products, further establishes that the malic acid used in the Products has a flavoring and not a preservative, flavor enhancer, or other purpose.

47.     Plaintiffs reserve the right to amend this Complaint to add further products that contain similar label misrepresentations as testing of the Defendant's food products continues, or other parties who might have been responsible for formulating or manufacturing the Products or certifying the accuracy of the Products' labels.

**D.     Plaintiff's Reliance.**

48.     Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

49.     Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to expect that a food product that states that it is "Naturally

9

Flavored" does not have its flavor created, simulated, or reinforced by flavoring agents derived from petroleum substrates.

50. Plaintiff reviewed the labels on the Products prior to her purchase, and reviewed the flavoring claims being made on those labels. Plaintiff reasonably understood Defendant's "Naturally Flavored" and "Made With Real Fruit Filling" statements, as well as its failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations were false.

51. As relates to flavorings, there is no functional difference between the statement that a product is "Naturally Flavored" and statements that a product is "all natural," "100% natural," "free of artificial ingredients," or the like. These are all equivalent statements with identical legal import as it relates to reasonable consumer expectations regarding the flavoring used in a food product.

52. Plaintiff reasonably relied on these label statements such that she would not have purchased the Products if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had she known that Defendant's representations regarding flavoring were false and misleading.

53. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

54. Consumers including Plaintiff especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products. That is, consumers depend on food manufacturers to tell the truth about the characteristics of their products while making decisions about which products

to buy and consume. Here, Defendant has not told the truth about the flavoring used in the Products.

55.     Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

56.     Defendant is in the best position to know what content it placed on its front labels and what chemicals and ingredients are in the Products and in fact knew that its representations regarding flavoring were false. Plaintiff nonetheless satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

a.  <u>**Who**</u>: Defendant made material misrepresentations of fact regarding the flavoring of the Products on the front label of the Products when it stated that the Products were "Naturally Flavored" and "Made With Real Fruit Filling." The labelling of these Products are entirely within the control of Defendant. These representations and omissions constitute material misrepresentation and omissions regarding the use of an artificial flavoring (specifically, DL malic acid) used to create, simulate, or reinforce the characterizing flavor of the Products.

b.  <u>**What**</u>: Defendant knew, or should have known, that the DL malic acid used in the Products was an artificial flavoring. Defendant's conduct here was, and continues to be, fraudulent because it misrepresented that the Products purchased by Plaintiff were "Naturally Flavored" and "Made With Real Fruit Filling" and thereby induced Plaintiff to purchase a Product she otherwise would not have purchased, or would have paid a lesser amount for.

c.  <u>**When**</u>: Defendant made the material misrepresentations and omissions set forth herein during the putative Class Period, including prior to and at the time Plaintiff

purchased the Products from Defendant in April 2024, and continues to do so, despite Defendant's knowledge that the Products contained and continue to contain artificial flavorings.

d. **Where**: Defendant's misrepresentations and omissions, as set forth herein, were made on the Products' front label, including the specific Product purchased by Plaintiff. This Complaint sets forth the precise misrepresentations made and includes a photograph of the Product's label containing these misrepresentations.

e. **How**: Defendant made material misrepresentations of fact and omissions on its front and back labels when it stated that the Products were "Naturally Flavored" and "Made With Real Fruit Filling" despite the Products containing an artificial flavoring, DL malic acid, used to create, simulate, or reinforce the characterizing flavor of the Products within the meaning of 21 C.F.R. § 101.22(i)(2).

f. **Why**: Defendant made the material misrepresentations of fact and omissions as set forth herein in order to induce the purchase of the Products by those persons including Plaintiff who prefer to purchase food products that use only natural flavorings, or to induce those persons to purchase the Products at a higher price than they otherwise would have paid had the truth about the use of DL malic acid in the Products been known.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the United States who purchased the Products within four years prior to the filing of this Complaint.

58. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

59. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

60. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

61. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation, as the Products are sold in stores in multiple states.

62. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a. Whether the marketing, advertising, packaging, and labeling for the Products is misleading and deceptive;

b. Whether a reasonable consumer would understand Defendant's label claims to indicate that the Products contained no artificial flavors, and reasonably relied upon those representations;

c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d. Whether Defendant breached an express warranty;

13

e. the proper amount of damages;

f. the proper scope of injunctive relief; and

g. the proper amount of attorneys' fees.

63. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

64. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

65. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

66. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

67. Plaintiff purchased all relevant flavors of the Products. In the alternative, all flavors of the Products are substantially similar to each other, in that they make the same deceptive flavoring claims, are sold for a similar price, and are made with a similar base formulation that varies only by flavoring.

68. There are no defenses available to Defendant that are unique to the named Plaintiff.

14

69. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

70. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

71. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

    a.  the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

    b.  the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

    c.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of

other Class members or would substantively impair or impede their ability to protect their interests.

72. Unless the Class is certified, Defendant will retain monies received as a result of their unlawful and deceptive conduct alleged herein.

73. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although she would like to.

74. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the presence of artificial flavors in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

75. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

76. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF NORTH CAROLINA UNFAIR AND
## DECEPTIVE TRADE PRACTICES ACT,
## N.C. GEN. STAT. § 75-1 *et seq.*

77.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

78.     Defendant Food Lion's sale of the Products to Plaintiff is a consumer transaction within the meaning of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 *et seq.*

79.     Defendant's ongoing failure to provide material facts about its Products on its labels violates the UDTPA in at least these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

   e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

80.     Defendant's misleading and deceptive labelling claims, as set forth herein, had the capacity, tendency, or effect of deceiving or misleading consumers and therefore violate the UDTPA.

81.     Defendant's reasonable reliance on these misleading and deceptive labelling claims has been the direct and proximate cause of Plaintiff's damages.

82.     By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

83.     Plaintiff has standing under the UDTPA because she has suffered economic injury as a result of Defendant's conduct as described herein.

84.     Under the UDTPA, a prevailing plaintiff may recover compensatory damages and reasonable attorney fees, and Plaintiff here is entitled to an award of both.

## COUNT 2
## UNJUST ENRICHMENT UNDER NORTH CAROLINA LAW

85.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

86.     Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the use of artificial flavors in the Products.

87.     Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

88.     Consumers including Plaintiff conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

89.     Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

90.     Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

91.     Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

92.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY UNDER NORTH CAROLINA LAW

93.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

94.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products are "Naturally Flavored."

95.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

96.     The Products do not conform to the express warranty that the Products are "Naturally Flavored" because they contain DL malic acid, an artificial flavor.

97.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the UDTPA and/or was unjustly enriched and/or breached an express warranty;

c. Awarding actual and other damages as permitted by law;

d. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Dated: September 17, 2024                       Respectfully submitted,


                              /s/ Inez de Ondarza Simmons
                              Inez de Ondarza Simmons
                              North Carolina State Bar No. 34303
                              **DE ONDARZA SIMMONS PLLC**
                              4030 Wake Forest Road, Suite 319
                              Raleigh, North Carolina 27609
                              Telephone: (984) 837-0361
                              Fax: (919) 277-1727
                              Email: Inez@DeOndarzaSimmons.com
                              Local Rule 83.1 Counsel

20

Charles C. Weller (*pro hac forthcoming*)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, CA 92126
858.414.7465
legal@cweller.com

*Counsel for Plaintiffs*